FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2012 MAR 29  AM 10: 15

CLERK _____
SO. DIST. OF GA.

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH, DIVISION

Case No. CR-497 -181

Keith G. Coleman
Plaintiff.

-vs-

United States of America
Defendant.

## MOTION FOR REDUCTION OF SENTENCE
## PURSUANT TO TITLE 18 U.S.C. 3582 (c)(2)

Prepared by:
Keith G. Coleman [pro se]
Reg. No. 09587-021
P. O. Box 699
Estill, SC  29918-0699

IN THE UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH, DIVISION

Keith G. Coleman                            )
        Plantiff/Petitioner              )

                          )

-vs-                                        )        Case No.  497-181

                          )

UNITED STATES OF AMERICA                    )
        Respondent/Defendant            )

## MOTION FOR REDUCTION IN SENTENCE
## PURSUANT TO TITLE 18 USC 3582(c)(2)

      Comes now the Petitioner/Plantiff Keith G. Coleman pro se and in forma pauperis

in the above entitled case respectfully requesting this court to grant leave to file "Motion

For Reduction In Sentence," pursuant to Title 18 USC§3582(c)(2). Petitioner further

prays this court construes [h]is pro se legal analysis liberally as explained in Haines v.

Kerner, 404 U.S. 519 (1972)

Pursuant to 18 USC § 3582 (c)(2) this court has jurisdiction to proceed with this matter before it. For in a case where a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has been subsequently lowered by the Sentencing Commission pursuant to 28 USC § 944 (o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court my reduce the term of imprisonment , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission or, as here, whereas on October 2010, the Commission promulgated an emergency temporary amendment to implement an emergency directive in Section 8 of the Fair Sentencing Act of 2010, Pub. L. 111-220, (hereinafter-"The Act"). The Act made a number of substantive changes to USSG § 2D1.1 (Unlawful Manufacturing, Importing Exporting or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy), including changes to the Drug Quantity Table at § 2D1.1(c). The amendments have become retroactive as of November 1, 2011. Relevant here, the Act also directed the Commission to review and amend the sentencing guideline to account for specified aggravating and mitigating circumstances in certain drug cases. See United States Sentencing Commission Supplement To The 2010 Guidelines Manual. For such reasons, Petitioner points to the FSA of 2010 review and amending guidelines that account for specified "aggravating" circumstances that relates to his drug case.

ISSUE I
## COLEMAN'S FOUR-POINT UPWARD ADJUSTMENT
## FOR "LEADER OR ORGANIZER" PURSUANT TO 3B1.1
## ROLE-IN-OFFENSE DOES NOT APPLY PURSUANT TO FSA 2010

Pursuant to the FSA Act of 2010 and the Commission's subsequent review of specified aggravating and mitigating circumstances as they relate to enhancements in certain drug cases; Petitioner Coleman (hereinafter Coleman) contends, that he received a Base Offense Level of 34 pursuant to the amount of drugs (Cocaine hydrochloride) which he was held accountable for under § 2D1.1. To the point, the court found Coleman sufficient for the "leader or organizer" of the group under U.S. Sentencing Guideline Manual § 3B1.1(a), thus an upward adjustment of four points to [h]is sentence, based upon a specified aggravating circumstance, under the crime of conviction, that is, Attempt and Conspiracy §846.

To this extent, Coleman requests this court to reconsider the four point upward adjustment of his offense level, based on the fact that it is an error of law and fact to find his role sufficient for a four level increase as a "leader or organizer" in a purely hypothetical designed conspiracy, whereas he maintain "no control" over the participants nor was the conspiracy "otherwise extensive". In short, the trial record clearly indicates the government was in total control of the offense and its operations from start to finish, therefore, Coleman argues—that at best—he could only be sufficient for a "middleman," which is not enough to satisfy a four point upward adjustment to his offense level. But assuming arguendo, (without agreeing) Coleman was sufficient for "leader or organizer," then at best, the adjustment should not exceed two-points pursuant to § 3B1.1 (Aggravating Role) See the (FSA 2010).

To be sure; Coleman was accused and convicted in a Reverse Sting whereas the government created "scenarios," planned and executed hypothetical drug shipments of allegedly 4.7 kilos of cocaine hydrochloride (*which was never actually distributed or in*

-4-

*the possession of any participats within the scenarios)*. The substance was said to be escorted by Coleman throughout the area of Savannah, Georgia with at least four other accomplices also named in his indictment. Subsequently, at sentencing the government requested an upward adjustment of four-points pursuant to § 3B1.1 premised on the evidence that Coleman recruited the other accomplices into the scheme, and that Coleman was given money to share equally among the accomplices, <u>See</u> Pre Sentence Report.

In contrast, Coleman argues section § 3B1.1(a) plain language requires both a "leadership role and, an extensive operation," but the evidence against him appears to indicate nothing other than his role as a middleman.

Clearly, in distinguishing a leadership and organization role from one of mere management of supervision, titles…are not controlling, <u>See</u> U.S. Sentencing Guidelines Manual § 3B1.1 cmt. The commentary provides: "Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others". Hence, mere status of a "middleman" or "distributor," as the evidence against Coleman reveals, does not support enhancement under U.S. Sentencing Guideline Manual § 3B1.1 for being a supervisor, manager, or leader. Section § 3B1.1 requires the exercise of some authority in the organization, the exertion of some degree of control. To this end, § 3B1.1(a) requires a district court to determine the role Coleman played in the alleged criminal activity, as to how many participants he exercised control over, <u>United States v. Baggett</u>, 954 F2d 674 (11th Cir), cert. denied _US_112 S.Ct.2983, 119L.Ed. 2d 601 (1982)(Emphasis added).

Nonetheless, the government argued that Coleman's role was aggravated because he recruited other accomplices or served as a distributor to extend the share of fruits of the crime to other accomplices for allegedly participating in the government's operated scheme. In opposition, it is worth mentioning that merely introducing a prospective accomplice to a CI is not enough—within itself—to define Coleman as a recruiter. Hence, Coleman contends the imposition of an upward adjustment of four points for his role-in-offense attached to his offense level premised on the governments contentions or legal position results in an error of law and facts, namely because enhancements under § 3B1.1(a) requires a district court to satisfy; (1) A "status determination," that "the defendant acted as a organizer or leader of the criminal activity," as well as; (2) a "scope determination," that the criminal activity met either the numerosity in the extensiveness benchmarks established by the guidelines," United States v. Tejada-Beltran, 50 F3d 105, 111 (1st Cir. 1995), which appears to have been omitted by the court.

First, looking to the "status-determination" it is settled by the record, that the government maintained total control of the criminal activity from start to finish. The record reflects, the government maintained all decision making authority, including planning and executing the scenarios of the alleged criminal activity. The record further reflects that Coleman exercised no authority over any accomplices in the criminal activity, neither did any accomplices testified to Coleman having any authority or led any accomplice during the offense. In fact, the record reflects that each accomplice volunteered to the scheme and were introduced to the criminal activity by the government's confidential informant (CI), See (Video or DVD). Moreover, the government's own evidence indicates [it] directed equal shared amounts of monies between Coleman and accomplices, See "Video" of accomplices affirming an equally shared amount of monies, thus Coleman had no claim to a larger share of

the fruits of the crime as required to be factored in to satisfy the criteria as "leader or organizer."  While Coleman acted as a "middleman" delivering on occasions the monies to accomplices as a distributor or introduced accomplices to the CI, this was not enough to trigger the four point upward adjustment pursuant to § 3B1.1(a).  Although, the government's PSR suggested Coleman recruited other co-conspirators by introducing accomplices to the CI, there is no evidence to suggest [h]e exercised control or decision making authority over the criminal activity or the criminal actors, hence § 3B1.1(a) cannot apply, See United States v. Carson, (1993, CA7 111) 9 F3d 576, reh, en banc, den. (CA7111) 1993 US App Lexis, 32667.

In order to meet § 3B1.1(a)'s status requirement, a defendant must have either organized or led at least one other participant in the offense, U.S.S.G. § 3B1.1(a), cmt. n.2. Section § 3B1.1 does not apply to a defendant who merely organizes or supervises criminal activity that is executed without the aid of others, such as in the instant case that was led and organized by the governments own agents.  Clearly, government agents and criminal informants are not "participants" under the guidelines, U.S.S.G. § 3B1.1, cmt. n.1; see also United States v. Ramos-Paulino, 488 F3d 459 (1st Cir. 2007).

Instead, Coleman must have exercised some degree of control over others involved in the commission of the offense for the purpose of carrying out the crime.  Although courts often distinguish between organizing criminal activity and organizing criminal actors, only the latter may be used to ground an enhancement under § 3B1.1(a), which was not evidenced in the instant case.

The government's PreSentence Report also suggested an upward role adjustment was justifiable based on the fact that Coleman exercised control over the assets (money) paid to accomplices for participating in the drug scenarios.  Plainly, the government's PSR wrongly

suggested an upward role adjustment. For it is well-settled that a defendant managed (money) of a criminal enterprise "may ground an upward departure but not an upward role-in-the-offense," Ramos-Paulino, 488 F3d at 464, thus, may not warrant a sentencing enhancement under § 3B1.1(a).

It is worth mentioning, that although a "participant" need not be convicted, Coleman request's this court to consider, that at least one of the five named participants was acquitted as "merely-present," in the offense, exonerating him from the conspiracy. This evidence at least implies Coleman's lack of decision making authority over him, which by "evidence" lessens the number required for the enhancements. Undoubtedly, § 3B1.1(a)'s prerequisite to "involve five or more participants" seems highly improbable, when one of the named five alleged participants was acquitted for being "merely-present" in the illegal scheme. To qualify for the enhancement on the five-or-more ground, the government must show four people other than the defendant who were "criminally responsible" for the commission of the offense, U.S.S.G. § 3B1.1 cmt. n.1., see United States v.Baggett, 954 F2d 674, 678 (11th Cir) Cert. denied, __ U.S.__, 112 S Ct. 2983, 119 L.Ed 2d 601 (1992) (emphasis added).

In considering the "scope determination" or "otherwise extensiveness" under § 3B1.1(a) that is, requesting this court to consider whether the government's scenarios were "otherwise-extensive," for the purpose of the scope prong. First, it is noteworthy that without proof of a defendants "leadership role," evidence of the operation's extensiveness is insufficient as a matter of law to warrant the § 3B1.1(a) adjustment, Yates supra.

To qualify on the "otherwise extensiveness" ground, however, three factors weigh in determining the extensiveness of the criminal offense; (I) the number of knowing participants, (II) the number of unknowing participants whose activities were organized or led by the

-8-

defendant with specific criminal intent, (III) the extent to which the services of the unknowing participants were peculiar and necessary to the criminal scheme, <u>United States v. Rubenstein</u>, 403 F3d 93, 99 (2nd Cir. 2005); <u>Baggett</u> supra.

To this extent, the "otherwise extensiveness" prong cannot apply to a government operated scheme, whereas criminal informants or government agents lacks the necessary specific criminal intent to commit the offense.   Moreover, the service of unknowing participants cannot apply in a supposed illegal operation ran totally by government agents. (<u>See</u> G.J. Transcripts and Trial Evidence on the Record)   Importantly, the Guideline calculations based on drug amount over-represented the actual offense conduct as "otherwise extensive."

Coleman respectfully moves this court to consider "the quantity system was developed to punish bigger distribution more harshly as it relates to an "otherwise extensive" offense, but the practice of government created conspiracies over a long period of time, as in the instant case, has the result of aggregating many small distributions, particularly (4.7 kilos) of cocaine hydrochloride, so as to make a long-term small quantity look like a large quantity by an alleged distributor, a practice that has historically been rejected by the courts, <u>see</u> <u>O'Neal v. Vermont</u>, 144 U.S. 323, 36 LED 450, 12 SCT. 693 (1892) (Mr. Justice Fields dissenting) accord; <u>United States v. Huerta-Rodrigues</u>, 355 F. Supp. 2d 1019, 1026 N.6 (D. Neb. 2005).

It is noteworthy, the Guideline's quantity-driven, and specified aggravating factors approach contributed to the disparity and  unreliability in Coleman's  increase offense level under  § 3B1.1  as compared to similar situated offenders. <u>See</u> (Accomplices-"PSR").  Oddly, a distributor or "escort" of distributors responsible for 4.7 kilos of cocaine hydrochloride at one time for six times gets the  same  sentence as the defendant caught "only-once" with  28.2

kilos of cocaine, See Neal v. United States, 516 U.S. 284, 296, 133 L.Ed. 2d 709, 116 SCT. 763 (".... disparity and unreliability in drug sentencing). For such reasons this court should reject Coleman's increase as the result of his offense being "otherwise extensive", moreover, consider the governments willful and absolute controlling length of the scheme (scenarios), the creativity of establishing or promoting aggravating factors to pursue enhanced penalties under § 3B1.1 Role-In-Offense, and in light of the mitigating circumstances depart downward from the four-point increase, while not denigrating the seriousness of the crime in this instance, but affirming the increased offense level does not adequately reflect the offense conduct, thus an increase may not apply.

## UPWARD ADJUSTMENT FOR ABUSE OF TRUST PURSUANT TO 3B1.1 SHOULD NOT APPLY

Coleman moves this court to review as error that [his] upward adjustment for "Abuse of a Position of Trust" pursuant to § 3B1.3 applies to his case. Section § 3B1.3's abuse of a position of trust increase can only apply where Coleman used his official position as a law-enforcement officer to ...."significantly facilitate," the commission or concealment of the crime charged.

Coleman argues, the government's case-in-chief was premised on the fact that while he was employed as a law-enforcement officer at the Savannah Police Department, he used that position to escort (fake) shipments of cocaine. Although, there is no legal precedent that embodies a police-defendant to the "abuse of trust" enhancement for using his position to facilitate a government ran crime, but other courts have recognized that the enhancement should only apply when the officer used his position to "significantly" facilitated the crime.

To significantly facilitate a crime means; mere fact that defendant was ....law-

enforcement officer is insufficient to support the enhancement under § 3B1.3 "Abuse of Trust" in sentencing, United States v. Burt,  134 F3d 997 (10th Cir. 1998).  To this extent, Coleman argues, to trigger the § 3B1.3 increase there must be evidence that points directly to his official duties use to significantly facilitate the offense, such as in the case of United States v. Foreman, 905 F2d 1335 (9th Cir. 1990) ("showing a badge or police identification to conceal the crime"); United States v. Young, 932 F2d 1035 (1991) same; United States v. Penta, 940 F2d 13 (1st Cir. 1991) (Police used his family with investigative techniques to avoid detection); United States v. Pascucci, 943 F2d 1032 (9th Cir. 1991) ("used identification to facilitate crime) United States v. Siciliano, 953 F2d 939 (5th Cir. 1992) (official capacity as officer); United States v Clark, 989 F2d 447 (11th Cir. 1999); same.  Referencing the foregoing cited cases the courts deemed sufficient for a increase pursuant to § 3B1.3 "Abuse of a Position of Trust;" unlike the foregoing citations, Coleman's trial evidence including testimony did not indicate that he used his "official position" as a law-enforcement officer to significantly facilitate the crime in a manner that sufficiently satisfies the criteria to trigger the increase, such as, using his official badge, position of authority or giving pertinent information to alleged drug-dealers or anything that would have "significantly facilitated" the offense charged, Clark supra.  Coleman's mere presence as an officer participating in an alleged drug scheme, without more, is not enough to trigger the increase pursuant to § 3B1.3's Abuse of a Position of Trust, but must significantly facilitate the offense under color of law and official authority, etc.  Plainly, the government's evidence did nothing to show Coleman satisfied that criteria for an increase pursuant to § 3B1.3, hence the upward adjustment should not apply.

In closing, and based also on the ruling of the Supreme Court in Booker, this district court must treat the U.S.S.G. as advisory. Thereby, this court  has  discretion to impose a non-

guideline sentence.  For the court shall use the Guideline Manual in effect on the date that the defendant is sentenced, <u>unless</u> doing so would violate the ex post facto clause, (U.S.S.G. § 1B1.11 and (b)(2) ).

On this fact of law, Coleman contends that [h]is offense level should be reduced from the four-point upward adjustment for role-in-offense pursuant to § 3B1.1(a) and from the two-points under § 3B1.3 (Abuse of Trust), then based on its discretion and <u>Booker</u> this court should consider factors that it may deem for further relief such as; Coleman has spent his time wisely after realizing his poor decisions has caused an unnecessary burden to his family and society as a whole. He continues to develop cognitive skills and living skills to provide himself and family a stable and responsible life.  Coleman also re-educated himself in programs that promoted change to his self-defeating ways.  And if given an opportunity, he has educated himself to become a skilled and productive contributor to this society that he may one day make amends for the potential harm he would have caused to his community and society, moreover, for the financial burden he has placed on tax-payers as a result of his incarceration.  For this reason, I pray this court exercises it discretion in providing relief.

## Relief Sought

For the foregoing reasons, Coleman respectfully requests this court to grant relief in following; dismiss upward adjustment of four points for role in offense and two point adjustment for Abuse of Trust and/or grant any relief this court deems appropriate.

Sincerely Submitted,

Keith G. Coleman
Reg. No. 09587-021
P. O. Box 699
Estill, SC 29918-0699

If It Pleases the Court;

The following signatures of the citizens of Savannah, Georgia, its surrounding counties and elsewhere, speak in behalf of Keith G. Coleman.  Sir, we ask that you would consider our petition and give special consideration to the relief of punishment imposed against Keith G. Coleman and/or sentence reduction.  We affirm by signature that Coleman's character and conduct is and has been reflective of his positive change and willingness to be a productive member of our society and overcome his past defeating ways.  We further affirm that Coleman's experience, education and life skills can only be an asset to our society, specifically in support of shaping our community into a positive and improved environment.

It is noteworthy, that prior to Coleman's fall in commencing a career in law-enforcement, he was in fact a highly decorated soldier in the Armed Services with an immaculate record who served and protected the democracy of this nation well, in time of war (Southeast Asia).  Coleman served the City of Savannah as a volunteer mentor and coach at Savannah's Neighborhood Youth Centers.  Coleman has been no less active in consistently involving himself in positive life-changing skills throughout his incarceration.  We believe and hope this court agrees that Coleman's past transgressions are forgivable and he is worthy of a second chance to be a positive active force in our community, this city and elsewhere.  Hence, for the foregoing reasons we ask this court, under its sovereign authority, to grant our request as it deems appropriate.  We citizens do thank this Honorable Court for granting our request in considering these special circumstances.  God Bless!

| Name | Address |
|------|---------|
| *[signature]* | 105 Suffolk Rd Savannah GA 31410 |
| *[signature]* | 105 SUFFOLK RD. SAVANNAH, GA. 31410 |
| *[signature]* | 250 Green Rd. Guyton, GA 31312 |
| *[signature]* Martha B Smith | 532 Gleason Ave Pooler, GA 31322 |
| *[signature]* | 505 E Cregor St. Bloomingdale GA 31302 |
| *[signature]* Jill Allred | 176 Meadowood Ln Guyton, GA 31312 |
| *[signature]* Benjamin Williams | 601 West 54th Street 31405 Sav. GA |
| *[signature]* | 2105 ½ Shaw Ave, Garden City Ga. 31408 |
| *[signature]* Ashley N Zitbrawer | 105 Suffolk RD Savannah, GA 31410 |
| *[signature]* | 10 Commodore Ct Savannah GA 31410 |
| *[signature]* | 12519 Allow Leaf Lane Jacksonville, Fla 32225 |

| Name | Address |
|------|---------|
| Brandi Bottrawes | 12519 Armrear Ln Jax, FL 3222? |
| Patricia Carter | 275 Jabez Jones Rd Guyton, GA 31312 |
| Joanie Davis | 2105 ½ Shaw Ave. Garden Ct, GA 31408 |
| Justin Martin | 104 E. Welwood Dr Savannah, GA 31419 |
| John Sheehan | 1526 Forsyth Red Savannah GA. 3140? |
| Ross Randall | 1422 S Camden ... Sav. 31404 |
| April Langteau | 124 Town Park Dr Rincon 31326 |
| _(signature)_ | 3 Brittlewood Ct. Sav-Ga. 31410 |
| Philip J Lucius | 142 Sea Palm Rd Sav. Ga 31410 |
| Judy Lucius | 142 Sea Palm Rd Sav Ga 31410 |
| Chelsey Russell | 1107 Cobb Rd Savannah, GA 31410 |
| Meridith Page | 101 Sylvania Rd Savannah GA 31419 |
| Robert Howard | 102 Longbridge Circle Rincon GA 3132? |
| Jay Clark | 310 Bullcreek Church Rd Claxton GA 30417 |

```
  ESTA8        *         INMATE EDUCATION DATA        *      12-07-2011
PAGE 001 OF 001 *              TRANSCRIPT              *      10:00:25

REGISTER NO: 09587-021    NAME..: COLEMAN                 FUNC: PRT
FORMAT.....: TRANSCRIPT    RSP OF: EST-ESTILL FCI

------------------------ EDUCATION INFORMATION ------------------------

FACL ASSIGNMENT DESCRIPTION                 START DATE/TIME STOP DATE/TIME
EST  ESL HAS     ENGLISH PROFICIENT         05-18-1998 0827 CURRENT
EST  GED HAS     COMPLETED GED OR HS DIPLOMA 06-08-1998 1914 CURRENT

------------------------- EDUCATION COURSES -------------------------
```

| SUB-FACL | DESCRIPTION | START DATE | STOP DATE | EVNT | AC | LV | HRS |
|---|---|---|---|---|---|---|---|
| EST | CORRESPONDENCE COURSE | 02-01-2009 | CURRENT | | | | |
| EST | HEALTH FAIR-QUARTERLY (HN#1) | 09-20-2011 | 09-20-2011 | P | C | P | 2 |
| EST | COMPUTER TECHNOLOGY (PG#6) | 04-01-2010 | 03-31-2011 | P | C | C | 816 |
| EST | FCI EMPLOYMENT COM(#2EM) | 01-03-2011 | 03-31-2011 | C | C | P | 0 |
| EST | FCI BUSINESS COMM.(#2EM) | 01-03-2011 | 03-31-2011 | C | C | P | 0 |
| EST | FCI ACCOUNTING(#2 EM) | 01-03-2011 | 03-31-2011 | C | C | P | 0 |
| EST | HEALTH FAIR-QUARTERLY (HN#1) | 03-22-2011 | 03-22-2011 | P | C | P | 2 |
| EST | FCI EXCEL 2002 (PF#3) | 10-01-2010 | 12-31-2010 | C | C | P | 0 |
| EST | FCI RECORDS MANAGEMENT (EM#2) | 10-01-2010 | 12-31-2010 | C | C | P | 0 |
| EST | FCI WORD 2000 COURSE (PG 6) | 07-01-2010 | 10-01-2010 | C | C | P | 0 |
| EST | FCI BUSINESS MATH (EM#2) | 07-01-2010 | 10-01-2010 | C | C | P | 0 |
| EST | HEALTH FAIR-QUARTERLY (HN#1) | 09-27-2010 | 09-27-2010 | P | C | P | 2 |
| EST | WOL CORE CLASS - 7-9 AM(PG#6) | 03-02-2010 | 09-01-2010 | P | C | C | 102 |
| EST | HEALTH FAIR-QUARTERLY (HN#1) | 07-26-2010 | 07-26-2010 | P | C | P | 2 |
| EST | FCI INTRO TO COMPUTERS (PG#6) | 04-01-2010 | 06-30-2010 | C | C | P | 0 |
| EST | FCI KEYBOARDING (PG#6) | 04-01-2010 | 06-30-2010 | C | C | P | 0 |
| EST | JOB SKILLS ASSESSMENT(#3 EM) | 08-03-2009 | 10-01-2009 | P | C | P | 60 |
| EST | FCI SERVSAFE 9-10:30 AM (PG 6) | 06-22-2009 | 10-02-2009 | P | C | C | 102 |
| EST | INFECTIOUS DISEASE PREVT(HN#1) | 01-31-2008 | 01-31-2008 | P | C | P | 1 |
| COP | ACE COM DRIVERS' LICENSE-THURS | 11-30-2006 | 03-07-2007 | P | C | P | 12 |
| COP | RPP5 RELEASE REQUIREMENT CLASS | 09-28-2005 | 09-28-2005 | P | C | P | 1 |
| BMP | CORRESPONDENCE COURSE ENROLLED | 11-15-2001 | 04-20-2004 | P | W | I | 10 |
| BMP | LEGAL RESEARCH, SUN, 1:30 PM | 11-25-2001 | 03-11-2002 | P | C | P | 15 |
| BMP | SEWING VT: M-F 12:30P-3:30PM | 01-30-2002 | 02-27-2002 | P | C | E | 60 |
| BMP | BUSINESS EDUC M-F 8:00A-11:00A | 02-04-2002 | 02-07-2002 | P | W | V | 9 |
| BMP | COMPUTER CLASS M-F 8-11 AM | 02-02-2001 | 07-30-2001 | P | C | M | 360 |

**U.S. Department of Justice**
*Federal Bureau of Prisons*
*Federal Prison Industries*
*Post Office Box 699*

*Estill, South Carolina 29918*

**MEMORANDUM FOR**: Employer

**FROM:** Executive Management and Employee Supervisors (Unicor)

**SUBJECT:** Employee Assessment and Recommendation Form

To Whom It May Concern:

As Executive Management and Employees Supervisors at Federal Prison Industries Estill, SC we state that Inmate Coleman, Keith 09587-021 worked in Unicor Prison Industry from March 2007-December 2009. During this time we observed him grow from a novice employee in the Fleet Industry to an efficient Management Clerk that learned and assumed the responsibility for all basic vehicular movement through our SAP system. As well as assisting in determining the final destination of Fleet Vehicles.

With the proper coaching, Keith Coleman became exceptionally proficient in Word Processing, Excel, and Adobe Reader, Power Point and eventually he could handle any length of document making intricate formatting changes with spread sheets. Moreover, he served as an intricate part in assessing and communicating accurate information to Management that accounted for well over a million dollars a quarter.

Keith Coleman's possesses exceptional communication skills and, maintained a positive working relationship with staff as well as fellow inmates during his tenure as a clerk. His consistent good ethics were a timely reflection of his desire to achieve excellence in his assignment, such as researching errors, asking questions and advising successful resolution to complex issues related to the Industry. Accordingly, he was an asset to the overall mission of the Fleet Industry here at Estill, SC (F.C. I.).

To this extent, we are certain that Keith Coleman will succeed as an asset to your mission, thus we highly recommend him as an employee.

**UNICOR PRISON INDUSTRY (FLEET)**
**EXECUTIVE STAFF AND EMPLOYEE SUPERVISORS**
**F.C.I. ESTILL**

SYLVESTER JENKINS
(Industrial Specialist)

ERIC JONES
(Factory Manager)

TIMON HOWELL
(Production Manager)

WALI SHABAZZ
(Contract Specialist)

# CENTRAL TEXAS COLLEGE

**Education For The Individual**



# Certificate of Award

This is to certify that *Keith Coleman* has successfully completed the course requirements in the study of the **Computer Technology Program,** which has involved 816 hours of instruction.

We therefore, in testimony thereof, affix our signatures hereto on

this *20th* day of *May, 2011.*

_____
Program Coordinator

_____
Instructor

U.S. DEPARTMENT OF JUSTICE                                   9/18/2006

# UNICOR

USP Coleman Furniture Factory
846 N.E. 54TH  Terrace
Coleman, Florida 33521

Subject: Inmate Evaluation

From: Gina Picarelli, Factory Manager

Dear Sir,

Inmate Keith G. Coleman, 09587-021, has worked for USP Coleman's Furniture Factory
since May 5, 2005. Since being hired in Unicor's Furniture Factory, he has taken the
initiative, with little supervision to apply himself and demonstrates good work ethics. As
a result of Inmate Coleman's positive work ethics among his peers as well as staff
members, he has excelled in skills, job performances and able to train other inmates.
Therefore, Coleman has been promoted to a position with a higher accountability and
responsibility.

As Inmate Coleman's immediate supervisor, based upon my observance of his work
ethics and excellent conduct among inmates and staff members, I am of the opinion, that
Inmate Coleman is a good candidate to be considered for a Medium Level Security
Facility.

Gina Picarelli, Factory Manager

Joseph Owens, Jr.
Recreation Specialist
Federal Correctional Institution
Post Office  699
Estill, South Carolina 29918
(803) 625-4607
Phone:  803.625.4607, ext. 4310
Fax:  803.625.5617
Email:  jowens@bop.gov

To whom it may concern,

I observed Inmate Keith Coleman work in the Recreation Department at FCI Estill. Since being hired I observed him take initiative with minimal supervision, apply himself and demonstrate a good work ethic as a Wellness Clerk. His organizational skills in assisting with the development of structured programs, has been an asset to the success of the Wellness program.   As a result of his positive work ethic among his peers as well as staff, he has excelled in skills, job performances and does well training other Inmates. Inmate Coleman's character and conduct is reflective of his positive change and willingness to be a productive member of society and overcome his past defeating ways. He has spent his time wisely, understanding the need to develop cognitive and living skills to provide himself as well as his family a stable and responsible life. Inmate Coleman has re-educated himself with life-skills, education and good experiences that can only be an asset to society, specifically in support of shaping the community into a positive and productive environment.

# National Center for Construction Education and Research

This is to certify that

## Keith Coleman

*has fulfilled the requirements for*

### Core Curricula

*in NCCER's standardized training curriculum*
*this Thirteenth day of September, 2010*



*Donald E. Whyte*

Donald E. Whyte
President

NATIONAL CENTER FOR CONSTRUCTION EDUCATION AND RESEARCH
BUILDING TOMORROW'S WORKFORCE

September 28, 2010

Keith Coleman
FCI Estill
100 Prison Rd
Estill, SC 29918

Dear Keith,

On behalf of the National Center for Construction Education and Research, I congratulate you for successfully completing NCCER's Contren® Learning Series program. I also congratulate you for choosing construction as a career.

You are now a valuable member of one of our nation's largest industries. The skills you have acquired will not only enhance your career opportunities, but will help build America.

Enclosed are your credentials from the National Registry. These industry-recognized credentials give you flexibility in planning your career and ensure your achievements follow you wherever you go.

To access your training accomplishments through the Automated National Registry, follow these instructions:
1.     Go to www.nccer-anr.org.
2.     Click the "Individuals" button.
3.     Enter the NCCER card number, located on front of your wallet card or transcript, and your PIN.
       *Note: The default PIN is the last four digits of your SSN. You may change your PIN after you login.*
4.     First-time users will be directed to answer a few security questions upon initial login.
5.     Contact the registry department with any questions.

NCCER applauds your dedication and wishes you the best in your future endeavors.

Sincerely,

Donald E. Whyte
President, NCCER

Enc.



# INMATE SKILLS DEVELOPMENT PLAN
## Current Program Review: 07-08-2010
Name: COLEMAN, KEITH J

RegNo: 09587-021

## ACADEMIC

| Status | Response Summary |
|---|---|
| ✓ | **INTELLECTUAL FUNCTIONING**<br>⊕ no intellectual deficits<br>ⓘ has NOT attended special education classes |
| ? | **LITERACY**<br>ⓘ some college, with High School diploma<br>⊙ Not all test results passing |
| ✓ | **LANGUAGE**<br>⊕ fluent in English as primary language |
| ! | **COMPUTER SKILLS**<br>⊕ possesses keyboarding skills<br>⊕ possesses word processing skills<br>⊙ lacks internet navigation skills |

| Progress and Goals |
|---|
| **Previous TEAM 01-21-2010**<br><br>Currently enrolled in a correspondence course.  Coleman consistently remains in some type of education or recreation program.  Excellent student who sets goals for himself and follows through.<br><br>**Current TEAM**<br><br>Progress:  Coleman continues his enrollment in a Correspondence Course.  He is also enrolled in numerous other Vocational classes.  Goal (G):  Continue in classes through completion.  Long Term Goal (LTG):  Complete all components of Computer Technology by July 1, 2012. |

## VOCATIONAL/CAREER

| Status | Response Summary |
|---|---|
| ✓ | **EMPLOYMENT HISTORY**<br>ⓘ employed at time of arrest<br>⊕ consistent employment history within 5 years prior to incarceration |
| ! | **CAREER DEVELOPMENT**<br>⊕ possesses significant expertise in field<br>ⓘ Farming, Fishing, and Forestry - 45<br>ⓘ Military Specific - 55<br>ⓘ Other, specify.... Mechanic<br><br>⊙ no realistic career/job goals upon release |
| ? | **INSTITUTION WORK HISTORY**<br>⊙ has no consistent institution work history<br>　　Eval: 05-31-2010 Satisfactory<br>　　Eval: 04-30-2010 Good<br>　　Eval: 03-31-2010 Satisfactory<br>　　Eval: 02-28-2010 Satisfactory<br>　　Eval: 01-31-2010 Good<br>ⓘ other: Coleman has a consistent work history; however, the work supervisor does not consistently forward work reports |

# INMATE SKILLS DEVELOPMENT PLAN
**Name: COLEMAN, KEITH J**

**PROGRAM REVIEW: 07-08-2010**

RegNo: 09587-021

## VOCATIONAL/CAREER

| | |
|---|---|
| | to unit team. |
|  | **POST INCARCERATION EMPLOYMENT**<br>⊙ post-incarceration employment not secured<br>ⓘ other: Too early to determine<br><br>⊙ no release documents obtained to date |

### Progress and Goals

**Previous TEAM 01-21-2010**

As of December 21, 2009, assigned to Recreation work detail, due to UNICOR closure.  There are no work evaluations on file.  Continue in a steady job assignment over the next 180 days.

Coleman is currently enrolled in Job Skills Assessment.  He completed Servsafe on October 2, 2009.

**Current TEAM**

Progress:  Coleman continues his job assignment in Recreation.  He is currently enrolled in the Wheels of Learning (WOL) Core class for entry into a Vocational Program.  (G):  Continue in a steady job assignment with good or better work evaluations.  Continue in WOL class through completion.  (LTG): Enroll in and complete a Vocational program of choice with Certification by July 1, 2013.

## INTERPERSONAL

| Status | Response Summary |
|---|---|
| ❗ | **RELATIONSHIPS**<br>⊙ witness to domestic violence<br><br>⊙ negative peer influences prior to incarceration<br>ⓘ criminal associates |
| ✔ | **FAMILY TIES/SUPPORT SYSTEM**<br>⊕ consistent social support available<br>　Immediate Family: Financial<br>　Immediate Family: Emotional<br>　Immediate Family: General<br>　Relative: Financial<br>　Relative: Emotional<br>　Relative: General |
| ❗ | **PARENTAL RESPONSIBILITY**<br>⊙ children under the age of 21<br>ⓘ contact maintained with children<br>ⓘ contact with other parent<br><br>⊙ inconsistent financial support for some or all children<br><br>⊙ RRC (MINT) Placement is not recommended<br>ⓘ explanation for not recommending RRC placement: Too early to determine |
| ✔ | **COMMUNICATION**<br>⊕ displays good communication skills |

# INMATE SKILLS DEVELOPMENT PLAN

**PROGRAM REVIEW: 07-08-2010**

Name: **COLEMAN, KEITH J**

RegNo: **09587-021**

## INTERPERSONAL

| Progress and Goals |
|---|
| Previous TEAM 01-21-2010 |
| Current TEAM |

## WELLNESS

| Status | Response Summary |
|---|---|
| ? | **HEALTH PROMO/DISEASE PREVENT** |
| | ⊕ does not use tobacco (cigarettes, cigars, and/or smokeless tobacco) |
| ✓ | **DISEASE/ILLNESS MANAGEMENT** |
| | ⊕ complies with treatment recommendations and/or takes medications as prescribed, or none required |
| | ⊕ healthy - No current health concerns |
| | ⊕ no dental problems |
| | ⊕ no non-routine services/assistance devices needed |
| ✓ | **TRANSITIONAL PLAN** |
| | ⊕ does not require medication upon release from custody |
| | ⊕ does not require on-going treatment or follow-up after release from custody |
| | ⓘ TB Clearance Complete - See Exit Summary |
| | ⊕ health Services recommends for RRC placement |
| ! | **GOVERNMENT ASSISTANCE** |
| | ⓘ has previously received Social Security assistance |
| | ⓘ eligible for Social Security assistance after release |
| | ⊙ application not submitted to SSA |
| | ⓘ has served in the U.S. Armed Forces, U.S. Military Reserves, AND/OR U.S. National Guard |
| | ⓘ spouse or a parent has not served in the U.S. Armed Forces, U.S. Military Reserves, AND/OR U.S. National Guard |
| | ⊙ application not submitted to VA |
| | ⓘ has not previously received veterans benefits |

| Progress and Goals |
|---|
| **Previous TEAM 01-21-2010** |
| Over the next 180 days, participate in a Quarterly Health Fair or other Wellness program through Recreation. |
| **Current TEAM** |
| Progress:  Coleman has not participated in a Wellness class as recommended during previous team.  He is however programming exceptionally in other areas. |

# INMATE SKILLS DEVELOPMENT PLAN

**PROGRAM REVIEW: 07-08-2010**

Name: **COLEMAN, KEITH J**

RegNo: **09587-021**

## MENTAL HEALTH

| Status | Response Summary |
|---|---|
| (!) | **SUBSTANCE ABUSE MANAGEMENT**<br><br>⊙ evidence of inappropriate use of alcohol, prescription medications and/or illegal drugs in the year prior to arrest<br>   alcohol: Daily<br><br>⊙ no history of substance abuse treatment<br>ⓘ not currently participating in substance abuse treatment |
| (?) | **MENTAL ILLNESS MANAGEMENT** |
| (?) | **TRANSITIONAL PLAN** |

| Progress and Goals |
|---|
| **Previous TEAM 01-21-2010** |
| **Current TEAM** |

## COGNITIVE

| Status | Response Summary |
|---|---|
| (✓) | **GENERAL BEHAVIOR**<br>⊕ no evidence of behavioral problems as a juvenile<br><br>⊕ no evidence of behavioral problems as an adult |
| (✓) | **CRIMINAL BEHAVIOR**<br>⊕ no onset of criminal behavior before the age of 14<br>⊕ no criminal versatility: Convictions in less than 3 categories<br>⊕ no significant history of violence: Less than 2 violent convictions |

| Progress and Goals |
|---|
| **Previous TEAM 01-21-2010** |
| Coleman continues to maintain a clear disciplinary record.   Continue clear conduct over the next 180 days. |
| **Current TEAM** |
| Progress:  Coleman continues to maintain a clear disciplinary record. (G):  Continue clear conduct through next team review. |

# INMATE SKILLS DEVELOPMENT PLAN
Name: **COLEMAN, KEITH J**

**PROGRAM REVIEW: 07-08-2010**
RegNo: **09587-021**

## CHARACTER

| Status | Response Summary |
|---|---|
|  | **PERSONAL CHARACTER**<br>⊙ insufficient variety of behaviors to warrant overall positive personal character<br>⊕ regular volunteer work (not court ordered)<br>⊕ evidence of spirituality<br>   talks to a friend or mentor about spiritual/religious issues: Sometimes<br>   active participation in a faith group: Sometimes<br>   connected to outside spiritual/religious community: Sometimes<br>   examines actions to see if they reflect values: Sometimes<br>   finds meaning in times of hardship: Sometimes<br>⊕ assistance to strangers without expectation of reward<br>ⓘ religious assignment: PROTESTANT<br><br>⊙ criminal history contains evidence of influence by others |
|  | **PERSONAL RESPONSIBILITY**<br>ⓘ reports responsibility for current incarceration as:<br>⊕ self (sole responsibility)<br><br>⊙ no efforts to make amends for their crime(s) |
| | Progress and Goals |
| | **Previous TEAM 01-21-2010**<br><br>**Current TEAM** |

## LEISURE

| Status | Response Summary |
|---|---|
|  | **USE OF LEISURE TIME** |
| | Progress and Goals |
| | **Previous TEAM 01-21-2010**<br><br>Over the next 180 days, participate in one of the following Recreation Leisure Programs: Beading, Stick Art, Leather Crafts, Drawing/Painting, Crochet, Guitar, or Piano.<br>**Current TEAM**<br><br>Progress:  Coleman has not enrolled in a structured Recreation Leisure program as recommended during previous team; however, he utilizing his leisure time resourcefully through his current enrollment in numerous programs. |

## DAILY LIVING

| Status | Response Summary |
|---|---|
|  | **FINANCIAL MANAGEMENT** |
|  | **FOOD MANAGEMENT** |

# INMATE SKILLS DEVELOPMENT PLAN

**PROGRAM REVIEW: 07-08-2010**

Name: COLEMAN, KEITH J

RegNo: 09587-021

## DAILY LIVING

 **PERSONAL HYGIENE/SANITATION**
- ⊕ good personal hygiene and sanitation
- ⓘ quarters assignment: HOUSE C/RANGE 03/BED 304L

 **TRANSPORTATION**
- ⊖ does not have valid driver's license
- ⊕ No outstanding motor vehicle violations

- ⊖ does not own personal vehicle with appropriate insurance
- ⊕ possesses public transportation skills and has access to public transportation

**IDENTIFICATION**
- ⊕ has photo identification
- ⊖ does not have birth certificate
- ⊖ does not have social security card

 **HOUSING**
- ⊕ established housing year prior to incarceration
- ⓘ established housing: owned or mortgage
- ⓘ established housing: lived with family
- ⓘ established housing: non-publicly assisted
- ⊕ established housing not in a high crime neighborhood

- ⊕ housing upon release
- ⓘ supervision district is not a relocation
- ⓘ anticipated housing plan approved by USPO(s)
- ⓘ no concerns with anticipated housing plan

 **RESIDENTIAL REENTRY CENTER (RRC) PLACEMENT**
- ⊖ not recommended for RRC placement

 **FAMILY CARE**
- ⊕ not responsible for obtaining child care for any dependent children upon release
- ⊕ not responsible for obtaining elder care for any dependent(s) upon release
- ⊕ not responsible for obtaining any other special services for dependents upon release



*Progress and Goals*

**Previous TEAM 01-21-2010**

Coleman maintains good cell sanitation.  He has saved $368 in his TF account.  Save $1000 or more by January 1, 2013.

**Current TEAM**

Progress:  Coleman has saved $222 in his TF Account.  (G):  Continue an effort to save money through next team review. (LTG):  Save $500 or more by July 1, 2012.

| **Inmate:** COLEMAN, KEITH J | Photo | **Register Number:** 09587-021 | **Detainer:** N | Lookup RegNo.: |
| **Institution:** ESTILL FCI | **Age:** 46 | **CMC:** Y |
| **Projected Release:** *[Date]* | **Release Method:** LIFE | **Sentry:** 12-30-2010 | Synch |

Go to ....

🔓 Assessment Plan is unlocked

Overview
Academic

**Vocational/Career**
  Interpersonal
  Wellness
  Mental Health
  Cognitive
  Character
  Leisure
  Daily Living
  **Inmate Comments**
  Archive TEAM

# TEAM
## Overview

### Current Summarized Progress and Goals

[ Save Changes ]   [ Select All ]   [ Deselect All ]

| **Academic** | Previous TEAM 07-09-2010 |
| ☑ Rollup Completed | Progress: Coleman continues his enrollment in a Correspondence Course. He is also enrolled in numerous other Vocational classes. Goal (G): Continue in classes through completion. Long Term Goal (LTG): Complete all components of Computer Technology by July 1, 2012. |
| | Progress:  Coleman continues his enrollment in Computer Technology and a Correspondence Course.  (G): Continue in classes through completion. (LTG): Complete all components of Computer Technology by 06-01-2012. |
| | [ SpellCheck ] |
| **Vocational/Career** | Previous TEAM 07-09-2010 |
| ☑ Rollup Completed | Progress: Coleman continues his job assignment in Recreation. He is currently enrolled in the Wheels of Learning (WOL) Core class for entry into a Vocational Program. (G): Continue in a steady job assignment with good or better work evaluations. Continue in WOL class through completion. (LTG): Enroll in and complete a Vocational program of choice with Certification by July 1, 2013. |
| | Progress:  Coleman continues his job in Recreation, where he earns good to outstanding work evaluations.  He completed WOL Core Class on 09-01-2010.  He also completed Business Math and Word 2000 on 10-01-2010.  He is currently enrolled in Records Management and Excel 2002.  (G):  Continue in current classes through completion.  (LTG):  Complete a VT program of choice with certification by 12-01-2012. |
| | [ SpellCheck ] |
| **Interpersonal** | Previous TEAM 07-09-2010 |
| ☑ Rollup Completed | |
| | [ SpellCheck ] |
| **Wellness** | Previous TEAM 07-09-2010 |
| ☑ Rollup Completed | Progress: Coleman has not participated in a Wellness class as recommended during previous team. He is however programming exceptionally in other areas. |

Case 4:97-cr-00181-DHB   Document 441   Filed 03/29/12   Page 31 of 35

| | |
|---|---|
| | Progress: Coleman participated in a Quarterly Health Fair on 09-27-2010.<br><br>[ SpellCheck ] |
| **Mental Health**<br><br>☑ Rollup Completed | Previous TEAM 07-09-2010<br><br><br><br><br>[ SpellCheck ] |
| **Cognitive**<br><br>☑ Rollup Completed | Previous TEAM 07-09-2010<br><br>Progress: Coleman continues to maintain a clear disciplinary record. (G): Continue clear conduct through next team review.<br><br>Progress: Coleman continues to maintain a clear disciplinary record. (G): Continue clear conduct through next team review.<br><br>[ SpellCheck ] |
| **Character**<br><br>☑ Rollup Completed | Previous TEAM 07-09-2010<br><br><br><br>[ SpellCheck ] |
| **Leisure**<br><br>☑ Rollup Completed | Previous TEAM 07-09-2010<br><br>Progress: Coleman has not enrolled in a structured Recreation Leisure program as recommended during previous team; however, he utilizing his leisure time resourcefully through his current enrollment in numerous programs.<br><br>[ SpellCheck ] |
| **Daily Living**<br><br>☑ Rollup Completed | Previous TEAM 07-09-2010<br><br>Progress: Coleman has saved $222 in his TF Account. (G): Continue an effort to save money through next team review. (LTG): Save $500 or more by July 1, 2012. |

Progress:  Coleman has saved $178 in his TF Account.  Coleman follow and exceeds unit team recommendations.  (G):  Continue to save money.  Continue exceptional program participation.  (LTG):  Save $300 or more by 12-01-2012.

SpellCheck

## Certificate of Service


I, <u>Keith G. Coleman</u>, hereby certify and declare under the penalty of perjury pursuant to Title 28 USC § 1746 that I have served a true and correct copy of the following:


Motion For Reduction of Sentence
Pursuant to Title 18 USC § 3582 (C)(2)
With Exhibits


which was deemed filed at the time it was delivered to prison authorities for forwarding, <u>Houston v. Lack</u>, 101 LED. 2d 245 (1998), upon the defendant(s) and his/her attorney(s) of record, by placing the same in a sealed, postage prepaid envelope addressed to:


(1) Original and (2) Copies
Clerk of Court
United States District Court
Southern District of Georgia
Savannah Division
P. O. Box 8286
Savannah, Georgia  31412


and deposited same in the United States Postal Mail at the Federal Correctional Facility, Estill, S.C. on the _19th_ day of _February_ 2012.

Keith G. Coleman
Reg. No. 09587-021
P. O. Box 699
Estill, S. C.  29918-0699



Coleman Keith
Reg. # 09587-021
Federal Correctional Institution
PO Box 699
Estill, SC 29918
United States

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH, DIVISION

P.O. BOX 8286

SAVANNAH, GEORGIA 31412